# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

v.  Criminal Action No. 1:14-cr-86-2

**AMANDA ISOLDE EISEMAN,**
   **Defendant.**

## OPINION/REPORT AND RECOMMENDATION
## CONCERNING PLEA OF GUILTY IN FELONY CASE

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11. Defendant, Amanda Isolde Eiseman, in person and by counsel, Natalie Sal, appeared before me on January 5, 2015. The Government appeared by Shawn Morgan, its Assistant United States Attorney. The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count Twenty of the Indictment.

The Court proceeded with the Rule 11 hearing by first placing Defendant under oath.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government to summarize the written plea agreement and also asked counsel for the Government if the agreement was the sole agreement offered to Defendant. The Government responded that it was and counsel for Defendant concurred. Defendant stated that the agreement as summarized by counsel for the Government was correct and complied with her understanding of the agreement. The Court **ORDERED** the written plea agreement filed.

The Court then inquired of Defendant whether she was a citizen of the United States. Defendant responded that she is a citizen. The undersigned asked Defendant whether she understood that if she were not a citizen of the United States, by pleading guilty to a felony charge she would be subject to deportation at the conclusion of any sentence; that she would be denied future entry into the

United States; and that she would be denied citizenship if she ever applied for it. Defendant stated that she understood.

The Court inquired of Defendant concerning her understanding of her right to have an Article III Judge hear the entry of her guilty plea and her understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated in open court that she voluntarily waived her right to have an Article III Judge hear her plea and voluntarily consented to the undersigned Magistrate Judge hearing her plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of her counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Amanda Isolde Eiseman, only after having had her rights fully explained to her and having a full understanding of those rights through consultation with her counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The undersigned then reviewed with Defendant Count Twenty of the Indictment and the elements the Government would have to prove, charging her with possession of pseudoephedrine, in violation of 21 U.S.C. § 841(c)(2). The undersigned then reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charges contained in Count Twenty of the Indictment, the impact of the sentencing guidelines on sentencing in general, and

inquired of Defendant as to her competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against her and understood the possible statutory maximum sentence which could be imposed upon her conviction or adjudication of guilty on that charge was imprisonment for a term of not more than twenty (20) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood she would be subject to a period of three (3) years supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. She also understood that her sentence could be increased if she had a prior firearm offense, violent felony conviction, or prior drug conviction. She also understood she might be required by the Court to pay the costs of her incarceration and supervised release.

The undersigned also reviewed her waiver of appellate and collateral attack rights as follows:

Ct. Do you understand that you have a right to appeal your conviction and your sentence to the Fourth Circuit Court of Appeals under 18 U.S.C. § 3742?

Def. Yes.

Ct. Do you understand you must give notice of intent to appeal to the Fourth Circuit within 14 days of your sentencing?

Def. Yes.

Ct. Do you understand that under 28 U.S.C. § 2255, and perhaps other statutes, you may collaterally attack or collaterally challenge your sentence and how that sentence is being carried out?

Def. Yes.

Ct. You understand that's what we commonly call a habeas corpus-type motion?

Def. Yes.

Ct. Do you understand that under paragraph 12 of your written plea agreement, if the District Judge sentences you to an actual sentence which is within the maximum sentence provided by 21 U.S.C. § 841(c), within the twenty years, within the $250,000, or both, that you give up –absolutely give up– your right to appeal that conviction and that sentence to the Fourth Circuit Court of Appeals?

Def. Yes, sir.

Ct. You also give up your right to collaterally attack or challenge the sentence and how it's being carried out by filing a writ of habeas corpus-type motion.

Def. Yes, sir.

Ct. The only thing you reserve under habeas is if you discover after today that there was either or both prosecutorial misconduct or ineffective assistance of counsel.

Def. Yes.

Ct. Do you know of any ineffective assistance of counsel as you sit here today?

Def. Negative.

Ct. Do you know of any prosecutorial misconduct as you sit here today?

Def. No.

Ct. Do you fully understand that under paragraph 12, if you never discover that there is any prosecutorial misconduct after today, if you never discover after today that there was any ineffective assistance of counsel in your case, then you will have fully given up your right to collaterally attack using writ of habeas corpus.

Def. Yes, sir.

| | |
|---|---|
| Ct. | And you intended to give up your rights of direct appeal and collateral attack as set out in paragraph 12 of your plea agreement? |
| Def. | Yes, sir. |
| Ct. | You fully understood that agreement when you signed it? |
| Def. | Yes, sir. |
| Ct. | Has anything about your understanding of it changed since you signed the agreement and today? |
| Def. | No, sir. |
| Ct. | Did you fully discuss paragraph 12 with Ms. Sal? |
| Def. | Yes. |

From the colloquy, the undersigned determined that Defendant understood her appellate and collateral attack rights and knowingly gave up those rights pursuant to the condition contained in the written plea agreement.

The undersigned Magistrate Judge further examined Defendant relative to her knowledgeable and voluntary execution of the written plea bargain agreement, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned then inquired of Defendant regarding her understanding of the written plea agreement. Defendant stated she understood the terms of the written plea agreement and also stated that it, along with the two representations discussed above, contained the whole of her agreement with the Government and promises or representations were made to her by the Government or other persons, including her own attorney, other than those terms contained in the written plea agreement.

The undersigned Magistrate Judge further inquired of Defendant, her counsel, and the Government as to the non-binding recommendations and stipulation contained in the written plea

bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count Twenty of the Indictment, the undersigned Magistrate Judge would write the subject Report and Recommendation and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court. The undersigned advised the Defendant that the District Judge would adjudicate the Defendant guilty of the felony charged under Count Twenty of the Indictment. Only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulation contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulation contained in the written plea agreement and/or sentenced her to a sentence which was different from that which she expected, she would not be permitted to withdraw her guilty plea. Defendant acknowledged her understanding and Defendant maintained her desire to have her plea of guilty accepted.

Defendant also understood that her actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that she understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced her to a higher sentence than she expected, she would not have a right to withdraw her guilty plea. Defendant further stated her attorney showed her how the advisory guideline chart worked but did not promise her any specific sentence at the time of sentencing. Defendant stated that she understood her attorney could

6

not predict or promise her what actual sentence she would receive from the sentencing judge at the sentencing hearing. Defendant further understood there was no parole in the federal system, although she may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

The Court would generally hear the testimony of a Government witness at this point in the hearing to support an independent basis in fact for the guilty plea. In this case, the parties agreed that the Government would provide a proffer. The Government proffered that in May 2014, Officer Adam Berg, currently assigned to the Three Rivers Drug Task Force, received information from the Michigan State Police that Defendant and co-defendant Timothy Ferrell, known methamphetamine manufacturers in the Gwynn, Michigan, area, had located to Fairmont, West Virginia, within the Northern District of West Virginia. The Task Force began monitoring NPLEX for purchases of pseudoephedrine for the purpose of manufacturing methamphetamine. Officers also monitored trash at various residences in Fairmont and conducted surveillance at those residences. On October 2, 2014, officers obtained a federal search warrant for Defendant's residence on Virginia Avenue in Fairmont. That warrant was executed on October 3, 2014. Defendant was arrested in the residence, where an active methamphetamine lab was located. Defendant consented to give a post-<u>Miranda</u> statement. As to the activity charged in Count Twenty, on September 18, 2014, Defendant purchased pseudoephedrine from the Wal-Mart pharmacy in Morgantown, Monongalia County, West Virginia, within the Northern District of West Virginia, knowing that such pseudoephedrine would be used to manufacture methamphetamine. Such purchase occurred in the midst of the methamphetamine manufacturing activity, and Defendant admitted that she was purchasing pseudoephedrine for such purpose.

Defendant stated she heard, understood, and did not disagree with the Government's proffer. The undersigned United States Magistrate Judge concludes the offense charged in Count Twenty of the Indictment is supported by an independent basis in fact concerning each of the essential elements of such offense. That independent basis is provided by the Government's proffer.

Defendant, Amanda Isolde Eiseman, with the consent of her counsel, Natalie Sal, proceeded to enter a verbal plea of **GUILTY** to the felony charge in Count Twenty of the Indictment.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and understood her right to have an Article III Judge hear and accept her plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting her plea; Defendant understood the charges against her, not only as to the Indictment as a whole, but in particular as to Count Twenty of the Indictment; Defendant understood the consequences of her plea of guilty, in particular the maximum statutory penalty to which she would be exposed; Defendant made a knowing and voluntary plea of guilty to Count Twenty of the Indictment; and Defendant's plea is independently supported by the Government's proffer, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore recommends Defendant's plea of guilty to Count Twenty of the Indictment herein be accepted conditioned upon the Court's receipt and review of this Report and Recommendation.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is remanded to the custody of the United States Marshal Service pending further proceedings in this matter.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 5th day of January, 2015.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE